## Thomas P. Eldridge v. Solomon B. Bliss.

*Breach of contract: Separate covenants.* Covenants in a contract by which one party agrees to pay taxes on land belonging to the other; and also that he will make up to the other any deficiency, on the sale of the land below a specified sum ; are separate covenants ; and the breach of the covenant to pay taxes can have no effect on the conditions relating to the other.

*Sale of real estate to fix contract liabilities: Notice.* In making a sale of real estate in order to fix a contract liability, the sale must be made within a reasonable time, and conducted in a reasonable manner. And if the sale be by auction, the analogies of sales under legal process will furnish the rule as to notice; and these prescribe a notice of, at least, six weeks.

*Heard April 21. Decided April 26.*

ELDRIDGE v. BLISS.

Error to Saginaw Circuit.

This was an action of special *assumpsit* brought by Thomas P. Eldridge, against Solomon B. Bliss. The facts and the judgment of the Court below, are stated in the finding of the Circuit Judge, and his conclusions of law thereon ; as follow :

" On the 11th day of January, 1867, Bliss, Janes & Co., of which firm the defendant was a member, were indebted to George Bliss & Co., of which firm the plaintiff was a member, in the sum of nine or ten thousand dollars.

" On that day the defendant caused to be conveyed to the plaintiff lots numbered three, four, thirteen and fourteen, in block number thirteen, in Glasby, Gallagher and Little's addition to the city of East Saginaw, in Saginaw County, which conveyance was made by a deed executed by Jay S. Curtis and wife, and Clark M. Curtis and wife, then the holders of the title, to the said plaintiff, to pay twenty-five hundred dollars of such indebtedness, and in consideration of that credit therefore, the defendant made and delivered to the plaintiff, a covenant in writing .in the following words and figures:

" ' For a valuable consideration to me in hand paid by Thomas P. Eldridge, of the city, county and state of New York, the receipt whereof is hereby confessed and acknowledged, I do hereby covenant and agree to and with said Thomas P. Eldridge, his heirs, executors and administrators, that I will pay all taxes and assessments of every kind, nature and description, which have been or shall hereafter be levied, assessed or imposed upon lots numbered three ( 3 ), four ( 4 ), thirteen ( 13 ) and fourteen ( 14 ), in block number thirteen, in Glasby, Gallagher and Little's addition to the city of East Saginaw, in Saginaw County, Mich., so long as said Thomas P. Eldridge or his heirs shall own the same or any part thereof, and that I will pay said taxes and assessments as soon, and as often in each year, as they shall become due and payable, and for the consideration

above stated, I do further covenant, promise and agree to and with the said Thomas P. Eldridge, that if upon the sale of the property above described, he shall not realize enough over and above all expenses which he shall incur, in relation to said property and the sale and transfer thereof, to amount to the sum of two thousand five hundred dollars, with interest thereon from the date hereof to the time of such sale, that I will pay to said Eldridge, his heirs or assigns, on demand at any time after such sale, such a sum of money as will make with the net proceeds of said sale, a sum equal to twenty-five hundred dollars and interest thereon, from this date to the time of such sale and transfer,'—which instrument was executed under seal and stamped with a revenue stamp of five cents by said defendant.

"The defendant neglected to pay the taxes of 1867, assessed on the lots mentioned in said covenant. In August 1868, T. S. Hall applied to the defendant to purchase said lots and offered to pay for them $2,700, and to pay one quarter of the purchase money down, and the balance in two years, and interest at the rate of seven per cent. per annum; this offer was communicated by defendant to plaintiff by letter, August 24, 1868. The plaintiff by letter, August 27th, 1868, declined the offer, requiring for the property $2,800, one quarter down and the balance in equal payments in one, two and three years, and interest thereon at the rate of ten per cent. per annum. Said Hall being informed of the plaintiff's answer, abandoned the negotiation. The property was then worth twenty-seven hundred dollars, if sold on terms of one-quarter down and balance in one, two and three years, with interest, that being the usual way of selling real estate, and has always been worth that sum or more since.

"On the 23d day of November, 1868, George Bliss & Co., forwarded to Wm. L. Webber, Esq., of East Saginaw, the said deed to the plaintiff, and the foregoing covenant with letter containing instructions.

" ' We wish first to ascertain whether the agreement is good and binding, and in case the property should not bring $2,500, whether the difference could be made out of S. B. Bliss. If he is good and we can make the money certain from him, we want you after a reasonable time or notice to sell the real estate at auction, and if the property does not bring $2,500, to enforce the difference from S. B. Bliss in accordance with the terms of the agreement. If there is no chance of realizing out of S. B. Bliss, we would not wish to sacrifice the property at auction, but hold on for private sale.'

" Mr. Webber above mentioned, after receiving further instructions from George Bliss & Co., and a full and sufficient power of attorney authorizing him to sell and convey said lots from said plaintiff, and after personal notice of his intention to do so to the defendant, and after offering to convey said lots to said defendant or to whomsoever he should appoint for that purpose, upon payment of the said sum of $2,500 and interest and taxes, advertised them for sale at auction. For this purpose he inserted a notice dated December 12th, 1868, over the signature of George Bliss & Co., in each of the two daily newspapers published in the city of East Saginaw, that the said property, describing it, would be sold on the 19th day of December, 1868, at 3 P. M. The notice was also printed in conspicuous type, forming a bill six by eight inches in size, and plentifully distributed through said city.

" On the 16th day of December, 1868, the defendant served a notice in writing on said Webber as follows : ' East Saginaw, Dec. 15th. 1868. MESSRS. GEORGE BLISS & CO., and WEBBER & SMITH, their Agts., and Attys. Sir : Whereas, I was offered for lots 3, 4, 13 and 14, block 13, Glasby, Gallagher and Little's addition, East Saginaw, Michigan, twenty-seven hundred dollars, and the firm of George Bliss & Co., refused to take the same through Mr. Eldridge one of the firm, and the same are now advertised for

sale at auction, at a season of the year, and in a state of the money market when you know the lots are not likely to bring their actual value: Take notice that I hereby protest against and forbid the sale of said lots at auction at less than twenty-seven hundred dollars, and shall not hold myself liable for, nor responsible on my guaranty for any deficiency in the amount realized from said sale. SOLOMON B. BLISS.'

"At the request of said defendant, and to give him an opportunity to raise the money to pay the plaintiff the amount claimed, said Webber adjourned said sale until December 26th, 1868, of which adjournment notice was given in both said daily papers, and also by handbills plentifully circulated, when the property was put up for sale at auction and sold for $1,535, to Martha H. Janes, who is defendant's sister, and wife of William C. Janes, who was one of the firm of Bliss, Janes & Co., but he, said defendant, Bliss, was not interested in the purchase, neither he nor Bliss, Janes & Co., contributed any funds therefor. Said auction sale was fairly conducted, and sale made to the highest bidder, at the Reading Room of the Bancroft House, in East Saginaw, that being the place specified in said advertisements, and a considerable number of persons was present, of whom three at least were competent bidders. Said Webber as Attorney in fact for said plaintiff, in the plaintiff's name, conveyed said lots in fee to said purchaser, in consideration of the amount bid aforesaid.

"At the time of said sale, and during the preceding autumn months there was a scarcity of money in this portion of this State. A similar scarcity occurs each year at the same season. Between January 11th, 1867, and the time of so forwarding said deed and covenant to said Webber, said plaintiff resided in the city of New York, and there was no evidence that plaintiff made any effort to negotiate a sale of said property, and from such absence of proof the

Court finds that no effort to negotiate a sale of the property was made by the plaintiff.

"Said plaintiff paid for the taxes of 1867, on said lots twenty-seven dollars and fifty cents, and two dollars and eighty cents commissions, for paying them. The plaintiff paid twenty-six dollars and fifty cents for the expense of advertising said sale and five per cent. on the proceeds thereof to Mr. Webber as his commissions for his services as agent in making said sale, amounting to seventy-six dollars and seventy-five cents. The plaintiff paid one dollar for stamp put on power of attorney to said Webber, and two dollars for stamps put on the deed to the purchaser at said sale."

The Circuit Judge found the following CONCLUSIONS OF LAW:

"1. The conveyance of the real estate was absolute to the plaintiff as purchaser, and not by way of security or mortgage for a debt. The relation of debtor and creditor did not exist between the parties in respect to the consideration of the conveyance. Nor was the transfer a conditional sale. The plaintiff was not bound on any contingency to reconvey to the defendant, nor to account to him for any portion of the proceeds in case they exceeded, even largely the consideration, the plaintiff could retain the land, or sell to any person willing to purchase.

"2. In order to hold the defendant liable on his covenant for deficiency, the plaintiff was bound to dispose of the land as prudent owners of such property commonly do who have no other recourse for its value. And a sale at auction on such notice, and under such circumstances, as the sale proved in this case was made, is not such a sale.

"3. The defendant's default in not paying the taxes of 1867, on the lots, did not justify the sale which was made, so as to render him liable by any other rule. The covenant to pay taxes was separate and independent, and the

plaintiff had a right of action on it as often as a breach occurred.

"The plaintiff is entitled to judgment for taxes of 1867 assessed on the lots neglected to be paid by the defendant and paid by the plaintiff, $32.38. And the defendant is entitled to costs."

To which conclusions of law numbered 2 and 3, the plaintiff excepted, and the judgment entered in the cause, the plaintiff below brings into this Court by writ of error.

*Wm. L. Webber,* for plaintiff in error.

*John J. Wheeler,* for defendant in error.

CAMPBELL, CH. J.

In January, 1867, Bliss caused to be conveyed to Eldridge certain real estate, which was received as a payment of $2,500 upon an existing debt. At the same time, Eldridge received of Bliss an agreement whereby he covenanted to pay all taxes upon the land while Eldridge and his heirs should hold it, and also covenanted that if, upon the sale of the property, Eldridge should not clear $2,500 and interest, over and above expenses, he would pay enough to make good that amount.

No attempt was made by Eldridge to dispose of the property until the time presently to be referred to. In August, 1868, Eldridge had an offer through Bliss of $2,700, payable one quarter down and the balance in two years, with interest at 7 per cent. He declined this and refused to take less than $2,800, payable one quarter down and the remainder in one, two, and three years, with interest at 10 per cent. This proposal was not accepted.

November 23d, 1868, Eldridge wrote to an agent in East Saginaw, directing him, in case Bliss was good, to sell the property at auction, after reasonable time or notice, and if the property brought less than than $2,500 to enforce the

difference. But if there was no chance of realizing from Bliss, he said he did not wish to sacrifice the property at auction, but would hold on for private sale. The case finds that the property from August, 1868, had always been worth as much as, or more than $2,700, if sold for one-fourth down and the balance in one, two, and three years, with interest, and that such was the usual way of selling real estate.

The agent, after notifying Bliss, and offering to convey to him or any one whom he might appoint, on payment of the $2,500, with interest and taxes, advertised it on the 12th of December, 1868, for sale on the 19th. On the 16th of December Bliss protested in writing against the sale for less than $2,700, and declared he would not be responsible for any balance if so sold. The sale was afterwards, at his request, adjourned one week, and then the premises were sold for $1,535. The sale was fairly conducted. It is found that every year at that time there is a scarcity of money in that portion of the State.

Bliss is sued for the deficiency, and for some small amounts paid for taxes and expenses of sale.

The Circuit Court gave judgment for the taxes, but not for the deficiency, holding that the sale was not justified by the contract, under the circumstances, and that the covenant to pay taxes was independent of the conditions relating to the sale.

We think the covenant to pay the taxes was a separate covenant, and that its breach could have no effect on the conditions relating to the land and its proceeds. The agreement to refund the deficiency on sale referred only to making up what should be wanting to raise $2,500, and interest, clear of expenses of sale.

The principal question, however, relates to the right of Eldridge to sell when and in the manner he did, and to the liability of Bliss to make up the deficiency.

To determine this it is necessary to look at the contract.

It appears that the land was conveyed by a third person to Eldridge in absolute payment of $2,500. No right is given or reserved to Bliss to take back the property upon any terms whatever. Eldridge was not compelled to sell it, and would have had a legal right to retain it. But, in order to hold Bliss, he was compelled to make a sale, and, in the absence of any specific terms, he was bound to act reasonably in doing so. He must sell within a reasonable time, and in a reasonable way. The case finds that he made no effort whatever to sell for nearly two years, and that he refused to sell for $2,700, when he had an opportunity to do so, while he did not object to selling for one-fourth down and the rest on credit, but merely objected to the price and the rate of interest, although it was the same that Bliss was bound to make up. He then directs a sale at an unpropitious season of the year, and for cash, but in case Bliss is not responsible he desires to hold on and sell at private sale.

We are very strongly inclined to regard the refusal to sell for $2,700, when it was offered, as estopping Eldridge from making any claim for deficiency under a subsequent sale for a less amount. Without deciding that he had no right to sell, except on the usual terms of part cash and part credit, it is quite evident, and is so found, that he would have done so if the price and rate of interest were satisfactory. The subsequent proceedings, in the light of his instructions, manifested a disposition to force a sale when he expressly expected and designed to risk a sacrifice which would not result if he waited longer. He had delayed when he could have sold profitably; and when a sale was not expedient, he sacrificed the property for less than two thirds of its value. His position was one which involved relations of a fiduciary nature, and his action was not such as it should have been. But we are relieved from the necessity of determining the precise extent of his powers to sell, because, in any event, he was bound, if he sold at auction for cash, to give reason-

able notice of the sale. And here the law furnishes anal-
ogies which should govern such a case. There is no sale of
land under any legal process or direction, when less than six
weeks notice is required to render the sale valid. The ob-
ject of this sale was to fix a pecuniary liability, and the
sale was without redemption. We have no hesitation in
saying that less than the usual legal notice was, in such a
case, unreasonable and insufficient, and that by making the
sale under these circumstances, the plaintiff precluded him-
self from setting up any claim against Bliss, and acted in
his own wrong. The sale was not made in pursuance of
the contract.

The judgment must be affirmed with costs.

The other Justices concurred.